terpose its mandate in such a case, it must follow that mere interference with rights secured by contract, as between individual incorporators and stockholders, is no answer to the right of the state, in the interest of the public good and in the regulation of private corporations by general law, to exercise such right under the reserved power.

Nor is Campbell v. A. Z. Co., 122 N. Y. 456, 25 N. E. 853, 11 L. R. A. 596, opposed to this view. Therein there was no legislative authority interposed, and it was held, upon the authority of Kent v. Quicksilver Mining Co., supra, that under such circumstances and in the absence of statutory authority there could be no agreement between the shareholders by which a preference could be given to some without the consent of all. In Martin v. Remington-Martin Co., 95 App. Div. 18, 88 N. Y. Supp. 573, this question was not involved; but, so far as its general reasoning is concerned, it is in harmony with the views herein expressed.

We reach the conclusion, therefore, that this act is a valid exercise of legislative power, and that it applies to corporations existing at the time of its passage. It follows that the judgment should be affirmed, with costs. All concur.

PATTERSON, J.   I concur with Mr. Justice HATCH in the conclusion at which he has arrived in this case, being compelled to do so, as he was, by the weight of authority.

---

(107 App. Div. 407.)

McMILLAN v. KLAW & ERLANGER CONST. CO.

(Supreme Court, Appellate Division, First Department.   September 29, 1905.)

CONSTITUTIONAL LAW—TAKING PROPERTY WITHOUT DUE PROCESS OF LAW.

 A municipal ordinance authorizing, on the payment of a specified fee, the issuance of permits for the construction of ornamental projections beyond the building line not more than five feet, is in conflict with Const. art. 1, § 6, declaring that no person shall be deprived of his property without due process of law, because it permits a property owner to erect, for his own benefit, a structure in the public street, thereby interfering with the easements of adjoining property owners abutting on the street, consisting of the right of free access to and egress from their property, and of the right to the free circulation of light and air over the open street to and from their property, which rights were acquired and paid for on the opening of the street.

Appeal from Special Term, New York County.

Action by Samuel McMillan against the Klaw & Erlanger Construction Company. From a judgment dismissing the complaint, and from an interlocutory judgment overruling a demurrer to the supplemental answer, plaintiff appeals. Reversed.

Argued before O'BRIEN, HATCH, PATTERSON, and LAUGHLIN, JJ.

James F. Donnelly, for appellant.

David Gerber, for respondent.

O'BRIEN, J. This action was brought by an owner of property situate on ·Forty-Second street, in the city of New York, to restrain the defendant, as owner of the adjacent lot, from erecting as a part of its building thereon a structure about 45 feet in height and extending into the street 4 feet beyond the building line. The defendant interposed a supplemental answer, by which it set up as a defense an ordinance passed by the board of aldermen of the city of New York subsequent to the commencement of the action, which ordinance it is claimed sanctioned and legalized the structure complained of. The plaintiff demurred to the supplemental answer upon the ground that it was insufficient in law. The demurrer was overruled, with leave to the plaintiff to withdraw the same, which it did not do, and final judgment was thereupon entered dismissing the complaint. From this judgment the plaintiff appeals, and also brings up for review the interlocutory judgment overruling the demurrer.

We are of the opinion that the demurrer was improperly overruled, for the reason that the ordinance by which the defendant seeks to justify the structure complained of is unconstitutional, in that it deprives the plaintiff of his property without due process of law. Const. N. Y. art. 1, § 6; Const. U. S. Amend. 5. The complaint alleges that Forty-Second street is a public thoroughfare, the fee thereof being in the city, in trust for the public use and benefit; that the plaintiff is the owner of premises fronting on this street, and adjacent to defendant's premises; that the defendant, prior to the commencement of the action, had begun the erection of a building upon its land, and as part of it was then engaged in putting up a structure which, when completed, will be about 45 feet in height, and will project 4 feet into the public street beyond the building line and the front of plaintiff's house; that this structure, when completed, will greatly damage the plaintiff's property "to an. extent impossible to calculate or estimate in terms of money damage," and will cause the plaintiff irreparable injury; that it will impair plaintiff's use and enjoyment of his premises by seriously interfering with his easements of light, air, and access, and it will be a violation of his property rights and an encroachment upon his said easements; that the use of the public street for this purpose is not an ordinary, usual, or customary use thereof for street purposes, but a most extraordinary, unusual, and novel use thereof, constituting a permanent diversion of said street pro tanto from the uses and purposes for which the fee of the said street was acquired and is held by the city; and that it will permanently impose a new and additional burden of servitude upon the street, and greatly damage the future use and occupation of plaintiff's premises. These allegations are not controverted by the supplemental answer, and they must therefore be regarded as admitted in considering the questions presented upon this appeal. The ordinance set out in the supplemental answer, and which, according to defendant's claim, confers the legal right to erect a structure of the kind described in the complaint, provides, so far as it is material to

this case, that the borough presidents and the park commissioners within their respective jurisdictions may, upon the payment of a specified fee, issue permits "for the construction of ornamental projections which project beyond the building line," not more than two feet on certain specified streets, and not more than five feet on other streets, including the one on which this property is situated, "providing in the opinion of the officer having jurisdiction no injury will come to the public thereby." And the term "ornamental projection" is defined as meaning and including "all decorative projections on the face of a building beyond the building line, in the nature of porches, arches, porticos, pedestals, free standing statuary columns and pillars, which are erected purely for the enhancement of the beauty of the building from an artistic standpoint." The question presented, therefore, is whether such a municipal enactment is constitutional, the effect of which would permit one property owner, for his own benefit, to erect a structure in the public street which would seriously impair the easements of his neighbor without compensating him therefor.

In approaching the consideration of this question, it must be borne in mind that three parties have separate and distinct interests and rights in the street upon which the plaintiff's property is situated, to wit, the public at large, the city of New York, and owners of property abutting thereon. With respect to the easements therein, those enjoyed by the public and those owned by individual property owners are separate and distinct. The former are public, and the latter are private, easements. Even though the public easements be destroyed, as in the instance of the closing of a street, private easements are not necessarily destroyed by such closing. The Legislature of the state, acting as the representative of the public at large, has, within constitutional limitations, authority to control the use of the street. It may widen the street or narrow it, may change its course or even close it, and, being the representative of the public, it may limit to a certain extent the use thereof by the public, providing that it does not invade the property rights of the individual or destroy his property rights without compensation. The municipality has an interest in the street by reason of its being vested with the fee thereof. But this fee is a qualified one, being held by it in trust for the public use and benefit, and that use cannot be departed from without violating an essential condition of the contract between it and the abutting property owners, as expressed by the adjudication in the street opening proceeding under which the land was obtained. So long as the municipality does not violate the contract, it may withdraw from the use of the general public a portion of the street, providing that it always acts within the constitutional limits and either under express legislative authority or in the exercise of the inherent right residing in it for controlling the use of its streets for the purpose for which they were dedicated.

Familiar examples of the exercise of this power are seen in the appropriation of a portion of the streets for hydrants (Ring v. City

of Cohoes, 77 N. Y. 83, 33 Am. Rep. 574); for stepping stones (Du Bois v. City of Kingston, 102 N. Y. 219, 6 N. E. 273, 55 Am. Rep. 804); for shade trees and grass plots (Dougherty v. Village of Horsehead, 159 N. Y. 158, 53 N. E. 799; Palmer v. Larchmont E. Co., 6 App. Div. 12, 39 N. Y. Supp. 522); for coal holes and vaults (Irvine v. Wood, 51 N. Y. 224, 10 Am. Rep. 603; Clifford v. Damm, 81 N. Y. 52; Wolf v. Kilpatrick, 101 N. Y. 146, 4 N. E. 188, 54 Am. Rep. 672); for the erection of statuary (Tompkins v. Hodgson, 2 Hun, 146); for public monuments (Parsons v. Van Wyck, 56 App. Div. 329, 67 N. Y. Supp. 1054); for areaways (Babbage v. Powers, 130 N. Y. 281, 29 N. E. 132, 14 L. R. A. 398); for bay windows (Wormser v. Brown, 149 N. Y. 163, 43 N. E. 524; Broadbelt v. Loew, 15 App. Div. 343, 44 N. Y. Supp. 159, affirmed 162 N. Y. 642, 57 N. E. 1105); for stoops (Joegensen v. Squires, 144 N. Y. 280, 39 N. E. 373); for telegraph and telephone poles (Eels v. American T. & T. Co. [Sup.] 20 N. Y. Supp. 600, affirmed 143 N. Y. 133, 38 N. E. 202, 25 L. R. A. 640; City of Utica v. Utica Tel. Co., 24 App. Div. 361, 48 N. Y. Supp. 916); and for other purposes which need not now be specified. But in all these cases the withdrawal of a portion of a street from the use of the general public has been approved by the courts only upon the ground that the public was benefited thereby, either directly, by reason of the particular use to which the land was appropriated, or indirectly, through the increased convenience with which business might be transacted, or in some other manner. And in no case have the courts sanctioned a material invasion of the property rights of abutting owners without compensation therefor.

This brings us to a consideration of these rights. They are special rights residing in the property owner and arising from the relation of his lot to the streets in front of it, and in the city of New York, since 1813, at least (2 Rev. Laws 1813, p. 408, c. 86, § 177), arising from the contract between himself and the municipality created by the adjudication in the street opening proceedings by which the land was acquired. The opening of the street conferred certain benefits upon abutting property, and for those benefits the owner has paid through the assessment for benefit imposed upon his property by the commissioners of estimate and assessment. He has acquired by these proceedings the right of free access to and egress from his property, and the right to the free admission and circulation of light and air over the open street to and from his property. These easements are property rights which have been paid for, and as such are guarded from legislative or municipal invasion as securely as the property rights in the land itself. When the street was opened the awards of the commissioners were based upon two considerations: First, the value of the land taken; and, second, the benefits which would result to the abutting property by reason of it being adjacent to the street. For these benefits, as already said, the owner had been assessed, and the constitutional guaranty that he should not be deprived of his property without due process

of law will be violated if they can be impaired or lessened without compensation and for the private advantage of his neighbor. If the city, having fixed the amount of the assessment upon the basis that the owner was to have certain valuable easements in an open street, should thereafter be permitted to diminish those easements without compensation, then the statute under which the street was opened would be an efficient engine of fraud and injustice.

The situation has been well stated by Chief Judge Ruger, in the course of the very able opinion in Lahr v. Met. E. R. R. Co., 104 N. Y. 266, 291, 10 N. E. 528, 532, as follows:

"An abutting owner necessarily enjoys certain advantages from the existence of an open street adjoining his property, which belong to him by reason of its location, and are not enjoyed by the general public, such as the right of free access to his premises, and the free admission and circulation of light and air to and through his property. These rights are not only valuable to him for sanitary purposes, but are indispensable to the proper and beneficial enjoyment of his property, and are legitimate subjects of estimate by the public authorities in raising the fund necessary to defray the cost of constructing the street. He is therefore compelled to pay for them at their full value, and if, in the next instant, they may by legislative authority be taken away and diverted to inconsistent uses, a system has been inaugurated which resembles more nearly legalized robbery than any other form of acquiring property."

This principle, which has been approved by the courts of this state in other cases (Story v. N. Y. E. R. R. Co., 90 N. Y. 122, 43 Am. Rep. 146; Hudson R. T. Co., v. Watervliet Co., 135 N. Y. 393, 32 N. E. 148, 17 L. R. A. 674, 31 Am. St. Rep. 838), is not at all in conflict with the decisions that a street may, without compensation to abutting property owners, be used for the purpose of surface railways (People v. Kerr, 27 N. Y. 188; Kellinger v. Forty-Second St. R. R. Co., 50 N. Y. 206). Such a case does not withdraw any part of the land from the public. Provision is made simply for a new method of transportation thereupon, which is not inconsistent with the ordinary travel, and the railway does not interfere with or impair the easements of the abutting property owners to light, air, and access.

Nor is the principle above quoted from the Lahr Case, supra, disturbed by the decisions holding that a change of grade of a street may be made by a municipality without compensation to the abutting property owners for the damage which they may thereby suffer. Talbot v. New York & H. R. R. Co., 151 N. Y. 160, 45 N. E. 382; Reining v. N. Y. Co. 128 N. Y. 165, 28 N. E. 640, 14 L. R. A. 133. As said by Chief Judge Andrews in Reining v. N. Y. Co., supra, the cases of change of grade—

"Proceed on the ground that individual interests in streets are subordinate to public interests, and that a lot owner, although he may have built upon and improved his property with a view to the existing and established grade of the street, and relying upon its continuance, has no legal redress for any injury to his property, however serious, caused by a change of grade, provided only that the change was made under lawful authority. This, it is held, is not a taking of the abutting owner's property, and the injury requires no compensation."

The structure which the defendant in this case is erecting, however, cannot in any event be regarded as a use of the street which benefits at all the public at large. On the contrary, it enhances the value of the defendant's property alone, and withdraws from the public a portion of the street itself. If the legality of the ordinance be sustained, it would permit individuals to appropriate from two to five feet of public property all along the streets of the city, and under the guise of ornamental projections to devote the land to whatever uses their private interests might require. The ordinance attempts to sanction private encroachments upon public property, which by the greatest stretch of the imagination cannot be considered as beneficial to the general public or as contributing to the business or commercial welfare of the community at large. Ordinances which thus devote public property to private uses are not looked upon with favor, and the courts will scan them closely with a desire to jealously guard the rights of the public from illegal invasion under the guise of municipal authority. An attempt by the municipality to authorize a willful encroachment or construction of this character will always be condemned, unless the power to sanction it is clearly shown.

One of the latest judicial utterances upon this subject is found in the opinion of the Court of Appeals in the case of Ackerman v. True, 175 N. Y. 353, 364, 67 N. E. 629, 631, where it is said:

"Although it is true that the title of the street in the city of New York is in the municipality, that title is held by it in trust for public use, and not even the municipal assembly has authority to permit permanent encroachments thereon. While that body may, by ordinance, regulate the use of streets, highways, roads, public places, and sidewalks, and prevent encroachments on and obstructions to the same, the charter expressly provides that they shall have no power to authorize the placing or continuing of any encroachment upon any street or sidewalk, except the temporary occupation thereof during the erection or repairing of a building on a lot opposite the same." ,

Referring again to the particular encroachment here involved, we repeat that it imposes a new, unusual, and additional burden upon the street, and diminishes the plaintiff's easements without compensation. No municipal or legislative enactment can justify or sanction such an invasion of the rights of private property guarantied to the citizen by both state and federal Constitutions, and therefore the ordinance set up in the answer is no defense to the plaintiff's cause of action. For these reasons, the demurrer thereto should have been sustained, as it was insufficient in law.

It follows that the judgment appealed from must be reversed, with costs to the appellant, and that the plaintiff should have judgment for relief prayed for in the complaint, with costs of the action. All concur.