## WILLIAMS v. ROBERT M. SILVERMAN CONST. CO.

(Supreme Court, Appellate Division, First Department. March 9, 1906.)

1. MUNICIPAL CORPORATIONS—STREETS—REGULATION—PROJECTIONS—PERMITS —REVOCATION.

Permits issued by park commissioners for the projection of bay windows beyond the building line of houses located on streets, authorized by New York City General Ordinance 1303, § 1, are revocable.

2. SAME—ORDINANCES—BUILDINGS—PROJECTIONS IN STREET—VALIDITY.

The board of aldermen of the city of New York had no power to pass General Ordinance 1303, authorizing the projection of bay windows attached to buildings beyond the "set-back" line, in violation of an agreement of property owners establishing such line for the purpose of widening the sidewalk and street.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 1443.]

3. INJUNCTION—PRELIMINARY INJUNCTION—SCOPE OF RELIEF.

In a suit to restrain the construction of certain bay windows extending beyond a set-back street line established by agreement of property owners, it was improper for the court to grant a preliminary injunction requiring the razing of that portion of the structure already completed, such relief being only proper as a part of the final judgment.

Patterson, J., dissenting.

Appeal from Special Term, New York County.

Action by John T. Williams against the Robert M. Silverman Construction Company. From an order granting an injunction pendente lite, defendant appeals. Modified and affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

John W. Weed and Weed, Henry & Meyers (Charles Meyers, on the brief), for appellant.

Richard T. Greene, for respondent.

CLARKE, J. The plaintiff and defendant are owners of the entire front of a block on the west side of Morningside Avenue West, in the city of New York, running from the northwest corner of 117th street to the southwest corner of 118th street. The plaintiff owns from 118th street running south 100 feet 11 inches, and the defendant owns from that point south 100 feet 11 inches to 117th street. The plots are both located within 350 feet of Morningside Park and hence, for certain purposes, are within the jurisdiction of the park department. The defendant's premises are 120 feet deep, and the plaintiff's premises are 125 feet deep. The plaintiff's premises are vacant. The defendant's premises now have thereon in course of construction a building covering in width the 100 feet 11 inches on the west side of Morningside Avenue West, with a depth of 100 feet; the intended structure being a six-story high class elevator apartment house. On the 3d day of June, 1890, certain owners of property in that locality, for valuable consideration, for themselves, their heirs, successors, and assigns, executed and delivered an instrument under seal, called a "set-back agreement." Among those who executed said agreement were former grantors of both the plaintiff and the defendant. The said agreement recited:

"Whereas, the department of public parks in said city propose that the whole of the westerly sidewalk of said Morningside avenue between 110th street and said Amsterdam avenue, late Tenth avenue, being 15 feet in width as now laid out, shall forever. hereafter be kept unincumbered from buildings and open and free for public use and ornamentations, and the undersigned as such owners are willing to co-operate in carrying out such improvement."

Those signing covenanted :.

"That hereafter the line parallel with the westerly side of said Morningside avenue, as now laid out and distant 10 feet westerly therefrom between said 110th street and said Amsterdam avenue, late Tenth avenue, shall constitute the exterior building line of all buildings or structures to be erected or constructed upon said land of said respective parties, and that the westerly side of Morningside avenue as now laid out shall constitute the exterior area or stoop line of all such buildings and structures. And also that neither said parties who shall sign and execute this agreement, their respective heirs, successors and assigns, nor any of them, shall or will at any time hereafter, build or erect or cause or suffer to be built or erected upon any of said land owned by them respectively within 10 feet of the westerly line of said Morningside avenue as laid out between said 110th street and said Amsterdam avenue, late Tenth avenue, any building or structure other than such as now is or hereafter may be permitted by law to be built or erected in said city between what is known as the exterior building, or house line and the exterior area or stoop line. And also that the said parties who shall sign and execute this agreement shall and will consent to the adoption by the board of aldermen of said city of an ordinance proper or necessary to carry this agreement into effect, and also that any such party or the heirs, successors, or assigns, of any such party shall be entitled as a matter of right to an injunction order, or decree from any court having jurisdiction in the premises, to restrain any other party hereto, or the heirs, successors or assigns of any such party from the violation of this agreement."

The purpose of this covenant is plain. The sidewalk was to be widened 10 feet, this set-back line was to take the place and stead of the building line established by the city, and beyond this set-back line nothing was to be built or erected other than such as was permitted by law to be built between the exterior building or house line and the exterior or stoop line. This is an action for an injunction to prevent the erection proposed by the defendant beyond that set-back line. If the proposed structure would be lawful if the set-back line. was in fact the building line established by the city, the action will not lie. If under such circumstances it would be unlawful, the action is well brought. The complaint alleges—and there is no dispute of fact in the case:

"That the main front line of the said building, except the projections herein described, does not extend beyond the set-back line mentioned in the aforesaid agreement. That, beginning at point on said set-back line distant respectively fourteen (14) feet ten (10) inches and fifty-one (51) feet ten (10) inches northerly from the intersection of said set-back line and the northerly side of West 117th street, defendant has commenced the erection of two several projections, in front of said building. The said projections consist of permanent stone and masonry walls, after the ordinary pattern or form of a bay window, said structure resting upon and being supported by the ground, and extending in front and to the east of said set-back line, from two (2) feet nine and one-half (9½) inches to two (2) feet eleven (11) inches, and incumbering the space in front of said set-back line by such buildings, so as to prevent open and free public use thereof and access to the same, and the defendant is also about to erect or cause to be erected a portico having the width of fifteen (15) feet and extending eleven (11) feet eight (8) inches above the sidewalk level and extending easterly beyond the set-back line a distance of three (3) feet four (4) inches, the same being supported by two columns and two pilasters."

The defendant concedes that these so-called bay windows are part of the permanent front of the building, that they are built of masonry and extend from the foundation to the roof, that one of them has a frontage of 18 feet 8 inches, and the other 19 feet 3 inches. Their walls are part of the walls of the front of the building, of the same material and the same construction, and the same thickness, as solid, substantial, and permanent. In short, 37 feet 11 inches of the said front wall of this building is built about 3 feet beyond the building line in the street, while the rest of it is built on the line. The defendant concedes the fact and claims that such construction is lawful. It claims that section 4 of General Ordinance 1303 of the board of aldermen, in force on May 1, 1904, which provides that "bay windows may be hereafter erected with a projection of not more than three feet beyond the building line, provided that when the projection exceeds one foot beyond the building line the total number of feet in width occupied by all the bay windows on the same frontage of the same building shall not exceed seventy-five per cent. of the width of the frontage of the building," and the provisions of section 1: "* * * The park commissioners * * * shall issue permits for the erection of bay windows projecting beyond the building line provided in the opinion of the officer having jurisdiction no injury will come to the public thereby. * * * For the purposes of this ordinance the bay window shall be taken to mean and include all projections on the face of the building in the nature of windows, such as are commonly called bay windows, show windows, oriel windows and bow windows, without regard to the material of which they are constructed or to the purposes for which they are to be used"—furnish the required authority.

These permits are revocable. Notwithstanding the able brief of counsel, it seems to me that this is no longer an open question. The facts are on all fours with Ackerman v. True, 175 N. Y. 353, 67 N. E. 629, decided by a unanimous court. In that case the house which the defendant built upon the lot adjoining the plaintiff's was extended three feet six inches beyond the easterly line of the street and had in addition what is known as a swell front or bay window also extending into Riverside Drive. Judge Martin said:

"The only remaining question that need be considered is whether the permit issued to the defendant by one of the commissioners of parks was legal and sufficient to justify him in erecting and maintaining the building in question upon a portion of the street, so that it constituted neither a public nor a private nuisance as to the plaintiff who suffered special damages by reason thereof. We think it was not. We have been referred to various statutes relating to this subject, upon which the defendant relies to sustain that contention, and from which he urges that the commissioners of parks are invested with power to permit such encroachments and erections as they shall see fit upon certain streets, of which Riverside Drive is one. These statutes we have carefully examined without finding any such authority conferred upon the park board, or upon any member thereof, as would justify their granting to the owners of property abutting upon the line of such a street a permit or right to extend the main wall of a permanent and substantial structure three feet and six inches into and beyond the line of the street. * * * Any such construction of that statute would result in practically annulling that portion of the charter of Greater New York which provides that streets and other public places in the city shall be inalienable. Section 1. Although it is true that the title of the streets in the city of New York is in the municipality, that title is held by it in trust for public use, and not even

the municipal assembly has authority to permit permanent encroachments thereon. While that body may by ordinance regulate the use of streets, highways, roads, public places, and sidewalks, and prevent encroachments upon and obstructions to the same, the charter expressly provides that 'they shall have no power to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof, during the erection or repairing of a building on a lot opposite the same.' "

After considering the power given to the park commissioners under the revised charter of 1901, the court proceeded:

"When, however, that provision is considered in connection with the other provisions of the charter relating to the inalienability of the streets, and depriving even the municipal assembly of any power to authorize the erection or continuance of any encroachment upon the streets, it becomes quite manifest, we think, that the Legislature did not intend thereby to confer upon a member of the park board the right to permit an abutting owner upon any of the streets of the city, whether within any park or outside, to encroach upon the street by the erection of permanent and substantial structures thereon."

The structure in the case at bar is both permanent and substantial. "Moreover," said the court, "if that statute were to be thus construed, its constitutionality would be at least doubtful, for even the Legislature cannot authorize the condemnation of private property for other than public uses."

In McMillan v. Klaw & Erlanger, 107 App. Div. 407, 95 N. Y. Supp. 365, the action was brought by a property owner to restrain the defendant as owner of the adjacent lot from erecting as a part of its building thereon a structure about 45 feet in height and extending into the street 4 feet beyond the building line. The defendant set up as a defense an ordinance passed by the board of aldermen of the city of New York, which it was claimed sanctioned and legalized the structure complained of. This court held:

"No municipal or legislative enactment can justify or sanction such an invasion of the rights of private property guarantied to the citizen by the state and federal Constitutions, and therefore the ordinance set up in answer is no defense to the plaintiff's cause of action."

There is nothing to be added to Mr. Justice O'Brien's careful examination of the subject in that case. Whatever cases may be in the books which tend to support a different rule must be held to be overruled by the Ackerman and the McMillan Cases, until, at least, the Court of Appeals has again passed upon the question.

It may perhaps be relevant to point out that Presiding Justice Van Brunt, in a dissenting memorandum in Broadbelt v. Loew, 15 App. Div. 343, 44 N. Y. Supp. 159, accurately foretold the event. He said: "Such a rule would enable the common council to authorize the extension of all buildings into the street." By the ordinance of May 21, 1895, it was provided that show or bow windows not starting from the ground and not extending above the first story, and not projecting more than 12 inches from the front wall, might be erected. By the general ordinance of June 25, 1903, it was provided that property owners could be licensed to erect bay windows with a projection of not more than three feet beyond the building line, but required the consent in writing of adjacent owners. By the ordinance of June 25, 1903, however, they provided that a permit for the continuance of an existing bay window

might be obtained without consent of adjoining property owners.  We have seen the kind of special ordinance the board passed in the Mc-Millan Case.   In the case at bar the solid structure from the foundation to the roof is claimed to be a bay window permissible under a revocable license.   If the board has the power to authorize such a structure projecting three feet into the street, why not six or ten? There is no such power.

But the injunction goes too far.   The mandatory portions thereof requiring the taking down of that portion of the structure already in place ought not to be in an injunction pendente lite.   That is the finai remedy sought in the suit and should await final judgment.

The order should be modified by striking out the provisions requiring the removal of so much of the projections as have been constructed, and as so modified affirmed, without costs.  All concur, except PATTERSON, J., who dissents.