SAUTTER v. UTICA CITY NAT. BANK et al. (Supreme Court, Appellate Division, Fourth Department. May 1, 1907.) Action by Christian Sautter against the Utica City National Bank and another. Judgment for plaintiff, and defendants appeal. Affirmed.

PER CURIAM. Affirmed, on opinion of ROGERS, J., at Special Term. 90 N. Y. Supp. 838, 45 Misc. Rep. 15.

McLENNAN, P. J. (dissenting). The action was commenced on the 7th day of November, 1902, to restrain the defendant bank and the defendant Stannard, who had contracted with it for that purpose, from erecting upon premises owned by the defendant bank and which adjoin premises owned by the plaintiff, both of which are situate upon the westerly side of Genesee street in the city of Utica, N. Y., and abut thereon, a building in such manner that the front end thereof would project out into the street practically two feet, and to cause the removal of any portion constructed which so projected. The question presented by this appeal is, may an owner of premises abutting upon a public city street, to the fee of which street he has no title, erect a building on his premises, against the protest of the owner of adjoining premises made at or before the time such erection is commenced, so that a substantial and essential part thereof projects into the street nearly two feet, and justify such encroachment by the fact that the municipality in its discretion authorized the same under and by virtue of an act of the Legislature which assumed to invest it with such discretionary power? Or, failing in that, may he retain what was thus illegally obtained by proving that the adjacent owner is not materially damaged by such unlawful encroachment? Such a rule would be unjust and inequitable, and, as it seems to me, has not yet been approved by decision of our highest court. Practically the facts pertinent to the questions here for review are not in dispute, and, where controverted, it will be assumed that the findings of fact made by the learned trial court are conclusive, not being contrary to or against the weight of the evidence. Genesee, one of the principal business streets in the city of Utica, N. Y., extends in a southerly direction from the Mohawk river to and beyond the city limits. Its width for the entire distance from Baggs Square to the Erie Canal, between which points the premises which are the subject of this controversy are located, measured between the building lines as established and occupied for a great number of years by the public and by the owners of premises abutting thereon, is from 97.4 to 97.45 feet, and during all the time the buildings erected upon either side of said street, and which were used for the purpose of banks, stores, offices, etc., have practically been erected upon said street lines and have not encroached upon the street. Genesee street, which was originally a state road, was laid out pursuant to chapter 29 of the Laws of 1794, entitled "An act for laying out and improving a road from old Ft. Schuyler to the Genesee river." Among other things it was provided in said act: "And be it further enacted, that the said road shall be laid out six rods wide, but it shall not be necessary for the said commissioners to open and improve the same above four rods wide in any part thereof. And the whole of the said road, when laid out, shall be considered as a public highway and shall not be altered by the commissioners of any town or country through which the same shall run." The act further provided that the commissioners appointed to lay out and build said road might acquire the right of way either by purchase or condemnation proceedings, and that the cost thereof should be paid by the county in which such right of way was located. Thereafter by chapter 78 of the Laws of 1800 the old Seneca Turnpike Company was incorporated, under the name of the "President and Directors of the Seneca Road Company," and by said act it was authorized to make and construct the road formerly laid out by the state, "observing as nearly the line of the present state road as the nature of the ground will allow." And it was further provided in said act "that the said road shall be six rods in width, and that the said president and directors shall cause the same to be cleared of all timber excepting trees of ornament, and to be improved in manner following, to wit." Said corporation was also empowered to exercise the right of eminent domain in acquiring rights of way for said road. On the 1st day of March, 1822, the President and Directors of the Seneca Road Company, of the first part, and the trustees of the village of Utica, of the second part, entered into an agreement which provided as follows: "Witnesseth, that the said party of the first part, in consideration of the covenants on the part of the party of the second part, covenanted to

be performed, do hereby covenant and agree with the said parties of the second part that they may improve and repair the road of said company, lying easterly of the office of the clerk of the Supreme Court in the village of Utica, and between said office and the inception of said road, in such manner as to the party of the second part shall seem proper, without the interference of the party of the first part; provided, nevertheless, that the party of the second part shall not alter the width or route of said road, nor place any buildings, fences, or obstructions on the same. And the said party of the second part doth covenant to keep said described section of road in repair and to save the party of the first part harmless in consequence of any neglect to repair said road or any bridge or sluice on the same. It is hereby further agreed and understood that, in case the party of the second part shall not keep said road in repair, the party of the first part may enter on and repair the same." Concededly the portion of Genesee street involved in this litigation was included in the grant or agreement referred to. The city of Utica was incorporated in 1832, and succeeded to the street rights held by the village of Utica, which it succeeded; and by section 79, c. 18, p. 59, of the Laws of 1862, which is the Utica city charter, the common council are, among other things, made commissioners of highways.

We have called attention to so much of the history of the street in question to show that it was dedicated as a public highway by the state more than a century ago; that as thus dedicated it was six rods in width; and the acts of dedication on the part of the state, the agreement entered into between the turnpike company and the village of Utica, to the rights of which the city of Utica succeeded, all indicate that it was the intention of all parties that the width of said street should not be decreased. It will be seen that under the provisions of the acts referred to the people of the village of Utica and county of Oneida were compelled to pay for the right of way for a six-rod street and for the improvement of the same, and presumably such obligation was discharged by them. It appears without contradiction that the plaintiff and defendant are each the owner of premises on the westerly side of Genesee street, the easterly boundary of which is the westerly line of said street; that the defendant's premises are 57 feet on Genesee street and extend back to Burchard street, a distance of 65 feet; that the plaintiff's premises, which adjoin those of the defendant immediately on the south, are 19 feet front and the same depth as the defendant's. Before the commencement of this action, the plaintiff had erected on the premises owned by him a building four stories high, the front line of which extended only to the street line, and was occupied by him as a shoe store. The premises next north of the premises so owned and occupied by the plaintiff were purchased by the defendant bank shortly prior to the commencement of this action, and at the time there were old buildings thereon, the front line of which extended only to the street line. Shortly before the commencement of this action the defendant bank tore down such old buildings and assumed to construct the building in question, the east line of the front wall of which was on the street line; but, as found by the learned trial court: "(16) That there are built into and made a part of the front wall five columns, each resting on a pedestal, one half being in front of the face, and the other half, apparently, within the wall, and extending up 31 feet, where it is surmounted by a cap or scroll stone. That the base stone of the pedestal extends $23^3/_{16}$ inches from the face of the wall and is $55\frac{1}{2}$ inches wide and $8\frac{1}{4}$ inches thick. From this stone up to a point 5 feet $\frac{3}{4}$ inches above the sidewalk the pedestal varies in size. That the projection of the stone, next above the base, is $17\frac{3}{8}$ inches from the wall, and is capped by a stone about 8 inches thick, projecting $19^{13}/_{16}$ inches; and on top of this is another stone $6\frac{1}{4}$ inches thick and projecting $17^7/_{16}$ inches. That from the pedestal up the column is constructed of stone 1 foot 8 inches thick, half round, representing a diameter of 39 inches at the bottom, and tapering to 33 inches, giving a radius, and consequent projection, varying from $19\frac{1}{2}$ to $16\frac{1}{2}$ inches. That one of these columns stands at the southeast corner of the building, next to, but not upon, nor overhanging, the plaintiff's north line." It will thus be seen that the structure which extended into the street was not a temporary affair, but that it constituted a substantial and essential part of the building erected by the defendant. The portion which extends into the street is permanent, and as much a part of the structure as any other portion thereof. The occupancy of the street by such building under a claim of right would undoubtedly vest the defendant with title to the same if sufficiently long continued. It appears that, immediately upon the assertion by the defendant bank of the right to construct its building as indicated, the plaintiff protested, asserting that it had no right so to do. The defendant ignored the plaintiff's protest in that regard, and proceeded with the erection of its building as planned. Thereupon this action was commenced to restrain the defendant from erecting its building so that it would project into Genesee street, and a temporary injunction was obtained restraining such construction or action on the part of the defendants. Thereafter a motion was made on behalf of the defendant bank to dissolve such injunction, it alleging in substance that it was amply able to respond in any damages which the plaintiff might sustain by reason of the erection of such building in the manner contemplated, and thereupon such injunction order was modified, so as to permit the erection of the building as planned, but providing, however, that nothing therein and in the other orders made in said action should affect the ultimate rights of the parties at the trial thereof. Thereupon the construction of the building was proceeded with, and had, at the time of the trial, been completed in the manner indicated. In other words, five columns, which are built into and made a part of the front wall of defendant's building, and which are a permanent and essential part of it, extending up 31 feet, project out into the street from $19\frac{1}{2}$ to $16\frac{1}{2}$ inches, and each is set upon a base 5 feet high, which

extends into the street and beyond the line of plaintiff's store 23³/₁₆ inches. and one of which is immediately adjacent to his premises.

After the commencement of this action, subdivision 5, § 36, c. 18, p. 43, of the Laws of 1862, entitled "An act to revise the charter of the city of Utica," was amended by chapter 2, p. 2, of the Laws of 1903, so as to authorize the common council to "permit stoops, porches, show windows, bow windows, columns, pilasters and ornamented portions of any building to encroach upon any street to a specified extent, where in its judgment the same will not interfere with the reasonable and substantial use thereof by the public." Two days after said act went into effect, and on the 16th day of February, 1903, the common council of the city of Utica adopted the following resolution: "Resolved, that permission is hereby given to the Utica City National Bank to have the five columns of the front wall of its new building at Nos. 108, 110, and 112 Genesee street encroach and project on Genesee street not exceeding 24 inches into the sidewalk from the face of the building line as it now exists at each side of said building. This permission is intended to cover the position of said columns as they are now being constructed, and permission is further given to said Utica City National Bank to have the cornices and ornamental projections above the street project over said Genesee street to the extent and as shown and marked on the plans of the front of said building filed with the city clerk Feb. 16, 1903. Resolved, that it is the judgment of the common council that it does determine that the encroachments above permitted do not and will not interfere with the reasonable and substantial use of Genesee street and of the said sidewalk by the public." Thereafter defendant's building was completed in the manner indicated. The justification of the defendant's acts in the premises, and of which the plaintiff complains, must. if it exists, be found in the "act" to which attention has been called and the resolution adopted by the common council pursuant thereto. It must be conceded that, if the resolution of the common council conferred any rights upon the defendant bank, it had the effect of vesting in it the right to occupy the street permanently and for all time; that for all practical purposes it thereby acquired title to so much of the street as is occupied by it. It cannot be claimed that, if the common council had authority to give such permission and which was acted upon, it could revoke the same, especially when there is no power of revocation reserved to it either by the "act" or resolution. So that the question is presented, may the state or city, either or both, grant to a private individual, for his exclusive use and benefit, without consideration or any advantage given to the public in return. a substantial part of a public street, against the protest of an adjacent owner? If such right exists, the individual may be permitted to thus occupy ten feet, as well as two, and it would be unnecessary to restrict such use to the erection of pilasters or columns. A solid brick wall might be even less objectionable. It is unimportant to inquire whether the title to the street in question is in the state or in the city of Utica. In either case it is for the benefit of the public generally, and particularly for the benefit of the owners of premises abutting thereon. There is no substantial difference between streets in which the legal title is in private individuals and those in which it is in the public, as to the rights of the public therein. Barney v. Keokuk, 94 U. S. 324, 24 L. Ed. 224; Story v. N. Y. Elevated R. R. Co., 90 N. Y. 155, 43 Am. Rep. 146.

The whole subject of the rights of owners of premises abutting upon city streets was elaborately discussed by Chief Judge Andrews in Kane v. N. Y. E. R. R. Co., 125 N. Y. 164, 26 N. E. 278, 11 L. R. A. 640, and it was there held: "The owners of lots abutting on a city street, the fee of which is in the municipality, have. by virtue of proximity, special and peculiar rights, facilities, and privileges therein, in the nature of easements, which are not common to the citizens at large, and constitute property of which they cannot be deprived by the Legislature or the municipality, or both, without compensation; and any use of such street inconsistent with its use as a public street, which interferes with those easements, is a taking of property, for which said owners are entitled to compensation to the extent of the damages occasioned thereby." It was further held in that case that, while the city of New York owns the fee of the lands occupied by the streets of said city, its tenure is in trust for street uses, and "the trust so created is not only for the benefit of the public at large, but for the special benefit of abutting owners, and it is to be presumed that upon the faith that the streets shall be forever kept open such owners have acted in improving and building on their adjoining land. The Legislature has no power to abrogate this trust or authorize its violation, by devoting a street to other and inconsistent purposes, without making compensation to abutting owners." The learned chief judge in his opinion (page 183 of 125 N. Y., page 281 of 26 N. E. [11 L. R. A. 640]) says: "Can the Legislature abrogate this trust, or authorize its violation, without making compensation for any injury sustained by abutting owners? Justice requires a negative answer, and we think it may properly be said that the acceptance and acting upon this trust by owners of abutting property creates in them a right which the law will enforce to have and enjoy the advantages and incidents of a public street, in connection with their property, of which the Legislature cannot deprive them without compensation. The statutes for laying out streets proceed on the theory that special advantages are thereby conferred upon, and will be enjoyed by, the owners of abutting property. * * * The system of maintaining, paving, and repairing streets, and assessing the expense on the adjacent property, recognizes the existence in abutting owners of a special and peculiar interest in the streets, other than that of the public at large." Further, at page 185 of 125 N. Y., page 282 of 26 N. E. (11 L. R. A. 640), in the opinion, it is said: "The state has dedicated the streets in the city of New York to be public streets. The abutting owners have acted upon the dedication and upon the pledge of the public faith

that they shall continue to be open public streets forever. It would be gross injustice to deprive them of the advantages intended, without compensation. The dedication ought to be, and is, we think, irrevocable." In the case of Lahr v. Metropolitan Elevated Ry. Co., 104 N. Y. 268, 10 N. E. 528, it was held that it was not essential to the acquisition of an abutter's rights in the street that any land should have been originally taken from him, as in any event he is a party to the proceedings to appropriate the land for the same, and liable to be assessed for its benefits, and therefore entitled to enjoy them. In the case at bar, as we have seen, the title to the street in question was acquired by the state, and the people of the county of Oneida were compelled to pay for the same so far as the right of way was not donated, were required to pay for a street six rods in width, and the same was dedicated as a public highway by the state. The people, including the plaintiff, have acted upon the faith of such dedication for more than a century, have been assessed for its improvement for its entire width, and we think it is not competent for the state to now authorize the giving or granting of any portion of the same to a private individual, or to authorize its appropriation, or any part of it, except to a public use, and then only upon condition that compensation shall be made to the abutting owner.

The cases cited would seem to be conclusive upon the question now being considered, except for the suggestion that the decisions in those cases all had reference to the rights of an owner because of encroachments immediately in front of his premises. We think such distinction in no manner affects the proposition. It would seem idle to say that an owner of premises abutting upon a street may prevent an illegal encroachment immediately in front thereof, but is powerless to prevent such encroachment in front of premises adjacent to his. The plaintiff in this case has no more right to insist that the street immediately in front of his premises shall be kept open and maintained at the width dedicated by the state than he has to insist that such street shall be kept open to such width upon either side of his premises, assuming that the fee to such street is in the state, but nevertheless held by it in trust for the public and especially for the owners of abutting property. The plaintiff, as abutting owner, is entitled to prevent unlawful encroachment thereon in front of premises adjacent to his, precisely the same as if such encroachment were attempted to be made immediately in front of his premises. The rights of an abutting owner in a street would be of comparatively little value if the owners of premises upon either side could extend their buildings into the street, even under resolution of the common council of a municipality, authorized by legislative act. The act in question illustrates the principle contended for as forcefully as could well be imagined. It assumes to authorize the common council of the city of Utica to permit any encroachment upon the streets of the city which it in its discretion may deem advisable, and in turn the common council assumes to authorize the defendant to

extend a substantial and essential part of its building at least two feet into Genesee street. As we have pointed out, the discretion of the common council is not restricted by the act, and the resolution adopted pursuant thereto contains no power of revocation; and, as we have seen, the occupation under the permission or grant given will, if sufficiently long continued under a claim of right, ripen into an absolute title. The permission given by the common council of the city of Utica pursuant to the act of the Legislature referred to, if valid, in effect gave to the defendant practically two feet of property which had been dedicated to the public by the state and which the public, including this plaintiff, had paid for, and upon the faith of which he had erected his building and made the improvements upon his property. Wholly eliminating for the present the question of damages, if the act in question and the resolution of the common council thereunder are effective, as well might the defendant have been authorized to extend an essential and important part of its building into the street ten feet. The extent of the encroachment would have no material bearing upon the question of power. In the case at bar it is not even pretended that the encroachment upon the street was permitted for public use or to serve any public purpose. Stated baldly, the defendant desired to place a permanent, substantial, and essential part of its building two feet into Genesee street, which street the plaintiff, his predecessors in interest, and the other taxpayers of Oneida county had paid for and improved, and which had been dedicated by the state irrevocably to their use; and, acceding to the desire of the defendant in that regard, the common council of the city of Utica, acting under the act of the Legislature, has assumed to grant the right to so occupy the street solely for the private use and convenience of the defendant.

We appreciate that there are many cases decided by the highest court of this state which hold that municipalities, clothed with the power such as was conferred by legislative enactment upon the city of Utica, may authorize certain encroachments upon a public street, even to the damage of abutting owners and without creating a cause of action in their favor. The nature of such permitted infringements upon such streets is illustrated in the following cases, which are cited in the opinion of the learned trial court: A hydrant (Ring v. City of Cohoes, 77 N. Y. 83, 33 Am. Rep. 574); stepping stone (Dubois v. City of Kingston, 102 N. Y. 219, 6 N. E. 273, 55 Am. Rep. 804; Robert v. Powell, 168 N. Y. 411, 61 N. E. 699, 55 L. R. A. 775, 85 Am. St. Rep. 673); hitching post (Hubbell v. City of Yonkers, 104 N. Y. 434, 10 N. E. 858, 58 Am. Rep. 522); a square stone placed at a point where the road turns at right angles to protect a fence from careless drivers (Hulse v. Town of Goshen, 71 App. Div. 436, 75 N. Y. Supp. 773); a shade tree with proper guard for its protection (Dougherty v. Village of Horseheads, 159 N. Y. 154, 53 N. E. 799); areas under a sidewalk, coal holes, cellarways, gratings, and other openings for the convenience of the abutting owner (Babbage v. Powers, 130 N. Y. 281, 29 N. E. 132, 14 L. R. A. 398;

Jorgensen v. Squires, 144 N. Y. 285, 39 N. E. 373; Trustees, etc., v. Foster, 156 N. Y. 354, 50 N. E. 971, 41 L. R. A. 554, 66 Am. St. Rep. 575; Broadbelt v. Loew, 15 App. Div. 343, 44 N. Y. Supp. 159; Id., 162 N. Y. 642, 57 N. E. 1105); watering troughs, fountains, monuments, statues, and the like; a market place erected by the municipality upon land condemned for and being a portion of the street (Henkel v. City of Detroit, 49 Mich. 249, 13 N. W. 611, 43 Am. Rep. 464). Our attention, however, has not been called to any case decided by the courts of this state where an encroachment upon a street has been justified where it constituted a permanent and essential part of a building of an abutting owner, and such an occupation as would ripen into title if sufficiently long continued, as in the case at bar. In all the cases to which attention has been called the authority to encroach upon the street was simply incidental to the right of the abutting owner, and was clearly revocable at the will of the municipality or power authorized to confer such right. The encroachment was temporary in its nature, and was not an essential part of the structure being erected by the abutting owner, and was authorized to facilitate the transaction of the public business. In the case at bar, as we have seen, the encroachment upon the street is an essential part of defendant's building, is permanent in its character, as much so as the front wall of the same, and is as essential to the structure. And so, as we have seen, if the state and the common council had authority to confer upon the defendant the right to occupy the street in question in the manner indicated, it became irrevocably possessed of such right.

One of the most obnoxious features of the legislative act in question is that it assumes to vest in the common council of the city of Utica the power, in its discretion, to say to what extent the streets of the city may be encroached upon. It has granted to the defendant the right to extend its building out into the street two feet. It may grant to the owner of the premises upon the other side of plaintiff's premises the right to extend the building upon its or his premises to the same distance or farther, and then deny to the plaintiff the right to extend any columns or pilasters in front of his building beyond the street line. In other words, presumably the plaintiff and defendant have paid equally for the acquisition by the state of the title to the street in question, and have paid equally for the improvement thereof, and still it is claimed that the common council of the city, under authority conferred upon it by the state, may grant to one the right to extend a substantial part of its building two feet into the street and deny to the other the privilege of extending his building beyond the street line. As before suggested, the proposition, as it seems to us, is inequitable and unjust, and, as we read the decisions, no authority can be found which supports the respondents' contention in that regard. In other words, we think the rule, as clearly established by authority, is to the effect that the state, where it is the owner of the fee of a street, or a municipality which is such owner, which street has been dedicated to the public use, may not give

to a private individual whose property abuts thereon a substantial part thereof, against the protest of the adjacent owner; that such adjacent owner has an easement and property right in the street in front of the premises of his adjacent owner, which are in legal effect the same as those which he possesses in the street immediately in front of his premises; and further, that in this case the assumed grant by the common council of the city of Utica to the defendant, which authorized it to construct a substantial part of its building out into the street, was inconsistent with the public use of such street, and was not such as the common council of the city of Utica was empowered to authorize, notwithstanding the act of the Legislature to which attention has been called. In McMillan v. Klaw & Erlanger Const. Co., 107 App. Div. 407, 95 N. Y. Supp. 365, the action was brought by an owner of property situate on Forty-Second street, in the city of New York, to restrain the defendant, as owner of the adjacent lot, from erecting as a part of its building thereon a structure about 45 feet in height, and extending into the street 4 feet beyond the building line. It appeared that the fee of the street was owned by the city, and an ordinance had been passed by the city which purported to authorize such encroachment. The question of the power of the city to give such authorization was fully discussed, and the holding of the court is stated in the headnote as follows: "An ordinance of the city of New York allowed the borough presidents and the park commissioners within their respective jurisdictions to issue permits authorizing the owners of buildings abutting upon the public streets of that city, the fee of which streets is held by said city in trust for the public use and benefit, to construct ornamental projections, extending beyond the building line not more than two feet on certain specified streets and not more than five feet on other streets, 'provided in the opinion of the officer having jurisdiction no injury will come to the public thereby.' These projections the ordinance defined as 'all decorative projections on the face of a building beyond the building line, in the nature of porches, arches, porticos, pedestals, free-standing statuary, columns and pillars, which are erected purely for the enhancement of the beauty of the building from an artistic standpoint.' Held, that such ordinance was unconstitutional so far as it affected an owner of property adjoining a building upon which such an ornamental projection is sought to be constructed, in that it deprives him of his property without due process of law, in violation of section 6 of article 1 of the New York Constitution and the fifth amendment of the United States Constitution; that an ordinance which devotes public property to private uses is not looked upon with favor, and the courts will scan it closely, with a desire to guard jealously the rights of the public from a legal invasion under the guise of municipal authority; that the ordinance under consideration imposed a new, unusual, and additional burden upon the street, and diminished the adjoining owner's easements therein without making compensation therefor." Mr. Justice O'Brien, in writing the opinion for the court, said (page 413 of 107 App. Div., page 370 of

95 N. Y. Supp.): "If the legality of the ordinance be sustained, it would permit individuals to appropriate from two to five feet of public property all along the streets of the city and under the guise of ornamental projections to devote the land to whatever uses their private interests might require. The ordinance attempts to sanction private encroachments upon public property, which, in the greatest stretch of the imagination, cannot be considered as beneficial to the general public, or as contributing to the business or commercial welfare of the community at large." And, further, the learned justice said (page 414 of 107 App. Div., page 370 of 95 N. Y. Supp.): "No municipal or legislative enactment can justify or sanction such an invasion of the rights of private property guarantied to the citizen by both state and federal Constitutions, and therefore the ordinance set up in the answer is no defense to the plaintiff's cause of action." And in that case judgment was entered restraining the defendant from erecting the structure complained of. In the case of City of New York v. Knickerbocker Trust Co., 104 App. Div. 223, 93 N. Y. Supp. 937, it was held that the title to the streets in the city of New York is held by it in trust for the public use, and the city has no authority to permit permanent encroachments thereon. The court said: "The city cannot give permission to an owner of property to erect any part of his building on the public highway." It was also held in that case that the plaintiff was entitled to maintain the action as a suit in equity, brought specifically for the purpose of compelling the defendant to remove obstructions and encroachments in the public streets of the city. In Ackerman v. True, 175 N. Y. 353, 67 N. E. 629, the court said: "Although it is true that the title of the streets in the city of New York is in the municipality, that title is held by it in trust for public use, and not even the municipal assembly has authority to permit encroachments thereon."

The cases cited, and many others to which attention might be called, as it seems to me, firmly establish two propositions: First, that the plaintiff has property rights in Genesee street in front of defendant's premises precisely the same as in front of his own premises; second, that the city or state, or both combined, have no power to authorize the defendant to occupy a portion of the street in front of its premises with a permanent and essential part of its building, solely for its use and benefit, for the reason that such grant or permission is unconstitutional, in that it deprives the plaintiff of his property without due process of law. Const. N. Y. art. 1, § 6; Const. U. S. Amend. 5. If such conclusion is correct, then it is entirely immaterial that, as found by the trial court, the plaintiff has not sustained special damages by reason of the encroachment complained of. It is elementary that the property of one may not be taken or encroached upon by another, although the property so taken has no value or the encroachment thereon causes no damage. Wood, in his work on Nuisances (2d Ed.) § 783, says: "Thus it is that in all ages of the world courts have with a strong hand upheld this right of absolute right of legal domain of one over his own property, and have guarded it from invasion with most jealous care. What-

ever invades this right is legal injury, whether damage ensues or not. It is a right for the violation of which the law 'imports damage to support the right,' and courts of equity have always interfered in a proper case to protect this right without any reference to the question of actual damage. In such cases the question is not one of damage on the one hand or benefit on the other, but simply whether a right has been violated by a wrongful act." See, also, Hallock v. Scheyer, 33 Hun, 111. In Collins v. Buffalo Furnace Co., 73 App. Div. 22, 76 N. Y. Supp. 420, decided by this court, in discussing this proposition, Mr. Justice Spring says (page 28 of 73 App. Div., page 424 of 76 N. Y. Supp.): "Nor was it incumbent upon the plaintiff to show the decrease in value to her lot by reason of the cutting off of her easements over this strip of land. The loss of a fixed road to and from her land was obviously a valuable right, and to measure it in dollars and cents was unnecessary. When it is apparent that nominal damages only have been sustained, then equity in certain cases may not retain jurisdiction solely for the purpose of awarding them where the chief relief sought cannot be granted. Here, however, approach to the lot is essential to its use and enjoyment, and, if that access is by an unmistakable way, the more profitable inevitably must be that use than if dependent upon the caprice of the one who is responsible for obstructing the easement. The plaintiff made a case on the principal ground and the damages were merely an incident. If to cause the defendant to remove these obstructions is out of all proportion to the damages which would be sustained by the plaintiff because of the blocking up of her right of way, then it may be the court in its discretion might award damages in lieu of imposing upon the defendant the large expense which the removal of such obstructions would entail. If the defendant desired any such relief, however, the burden was upon it to show the facts which would justify the court in adopting that course." In People v. Vanderbilt, 26 N. Y. 287, it was held that the obstruction complained of, which extended into the waters of the harbor of New York, was a public nuisance, and, the action having been brought to cause the same to be removed, it was held that the offer to prove that the crib and proposed pier were not and would not be an actual nuisance, and would not injuriously interfere with or affect the navigation of the river or bay, was properly overruled. The case of De Witt v. Van Schoyk et al., 110 N. Y. 7, 17 N. E. 425, 6 Am. St. Rep. 342, was an action brought to restrain the defendants from obstructing an alleged highway, and to compel them to remove obstructions placed by them thereon, and to restore the same to use of plaintiff and the public as it was before the alleged unlawful act of the defendants, and to restrain them from entering upon and using plaintiff's lands as a public highway. Danforth, J., writing the opinion for the court, said (page 11 of 110 N. Y., page 426 of 17 N. E. [6 Am. St. Rep. 342]): "Moreover, the acts of the defendants are in derogation of the plaintiff's title, and, being calculated to injure her in that respect, would sustain an injunction, although no damage had actually happened." The case at

bar, as we have seen, was brought to restrain the defendant from encroaching upon plaintiff's property rights, to prevent it from erecting its building in such manner that it would project into the street two feet immediately adjacent to plaintiff's property. No damages were asked for, and we think that, if such encroachment was unauthorized and was an invasion of plaintiff's rights, he was entitled to the relief demanded, wholly independent of whether he proved that he sustained special damages or not; that the finding of the trial court that he did not affords no justification to the defendant for such illegal encroachment.

The cases cited by and which are relied upon by respondents' counsel are not in conflict with the proposition enunciated. In all of those cases the plaintiffs sought to restrain or remove a public nuisance, which did not affect them otherwise than it affected the public generally, and in such cases it was held that to entitle them to succeed they must show that some special damages resulted to them because of the obstruction or nuisance complained of; in other words, that an individual who had no rights peculiar to himself to be protected would not be permitted to enforce the rights of the public. None of the cases so cited are authority for the proposition that strictly property rights of one may be invaded by another simply because no substantial damage results because of such invasion. There is no principle of equitable estoppel which can avail the defendant as a defense in this action. It erected its building as it did against plaintiff's protest, made at the first opportunity after he knew of its intentions in that regard. Such protest being ignored, he procured a temporary injunction restraining encroachment upon his rights during the pendency of the action. Such injunction was vacated, presumably upon defendant's allegation that it was amply able to and would abide by any determination finally made against it in this action. In other words, the defendant assumed to and did proceed with the construction of its building to completion with full knowledge of plaintiff's rights as claimed by him in the premises, and it therefore assumed the full responsibility for such acts. Further, it may be said that it attempted to fortify itself against its illegal acts after this action was commenced by the passage of the "act" to which attention has been called and the resolution of the common council adopted in pursuance of such "act," all of which, as we have seen, were void, because violative of section 6 of article 1 of the New York Constitution and of the fifth amendment of the United States Constitution.

To recapitulate, we conclude: First, that the plaintiff, because of his ownership of premises abutting upon Genesee street, had property rights in such street in front of premises adjacent to his; second, that the city of Utica, or the state of New York, or both combined, did not have power to invest the defendant with such rights or to authorize encroachment thereon solely for the benefit and use of such defendant; third, that the invasion or encroachment upon plaintiff's property rights cannot be justified because no damage resulted to the plaintiff because of such invasion or encroachment; fourth, that the defendant having committed the acts complained of against the plaintiff's protest and with full knowledge of all the facts, no question of equitable estoppel is involved. It is appreciated that, if the conclusions which we have arrived at are correct, a very large number of rights assumed to have been conferred by the municipalities of this state under legislative enactment may be void and valueless; but "it is the duty of all courts of justice to take care, for the general good of the community, that hard cases do not make bad law." Lord Campbell, in East India Co. v. Paul. 7 Moore's P. C. 111. In the case at bar, however, it may be said that the only hardship resulting to the defendant arises from the fact that it persisted in its unlawful encroachment notwithstanding plaintiff's protest, and with the bold assertion, in substance, that it was amply able to comply with the terms of any judgment which might be rendered against it. But, in so far as the question of public policy is involved, we think it high time that the attention of municipalities was called to the fact that they have no right to authorize a permanent encroachment upon a public street by one abutting owner to the detriment of and in violation of the rights of an adjacent owner. We think that the judgment should be reversed, and judgment awarded in favor of the plaintiff, directing that the encroachment erected upon Genesee street by the defendant should be removed, with costs of this action.

KRUSE, J., concurs.