Emily Talbot, Appellant, *v.* The New York and Harlem Railroad Company and The New York Central and Hudson River Railroad Company, Respondents.

151  155
154  557

151  155
169  [1]277
169  [2]284
169  [1]285

1. City Streets — Change of Grade — Damnum Absque Injuria. A change of grade of a public street, under lawful authority, is not a taking of private property for public use under the provisions of the Constitution, but, if detrimental to an abutter, is *damnum absque injuria*, and, hence, constitutes an exception to the general rule that abutting owners upon city streets, although not vested with the fee, cannot be deprived of their appurtenant easements without compensation.

2. New York City — Fourth Avenue Improvement — Change of Street Grade by Bridge — Non-liability to Abutter. The bridge in Forty-eighth street, New York city, erected by the New York and Harlem Railroad Company, under a board created by the legislature, in compliance with the act to improve and regulate Fourth avenue (L. 1872, ch. 702), on which a portion of the street thirty-four feet in width crosses, as a highway, over the railroad tracks in the avenue, and which is maintained and used by the city as a part of its highway system, constitutes, together with the connecting protection wall for the prevention of crossing the tracks at grade, a change of grade of a public street under lawful authority; and, hence, there is no liability on the part of any one for an interference with the appurtenant easements of an abutting owner by the bridge and wall — there being no closing of the street or exclusion of the abutter therefrom.

*Talbot* v. *N. Y. & H. R. R. Co.*, 78 Hun, 473, affirmed.

(Argued October 28, 1896; decided December 1, 1896.)

Appeal from a judgment of the General Term of the Supreme Court in the first judicial department, entered June 6, 1894, which affirmed a judgment in favor of defendants

entered upon a decision of the court dismissing the complaint upon the merits on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry A. Forster* and *Augustus S. Hutchins* for appellant. The wall and bridge being located where they are without legal authority, constitute a nuisance, which the plaintiff, who is specially injured thereby, is entitled to have removed. (L. 1872, ch. 702; Penal Code, § 385; *Davis* v. *Mayor, etc.,* 14 N. Y. 506, 524; *Cohen* v. *Mayor, etc.,* 113 N. Y. 532, 537; *Buchholz* v. *N. Y., L. E. & W. R. R. Co.,* 148 N. Y. 640; *People ex rel.* v. *Thompson,* 98 N. Y. 6; *People ex rel.* v. *Newton,* 112 N. Y. 396; *S. R. T. Co.* v. *Mayor, etc.,* 128 N. Y. 510; *P. P. & C. I. R. R. Co.* v. *Williamson,* 91 N. Y. 552; *In re City of Buffalo,* 68 N. Y. 167; *In re B. & A. R. R. Co.,* 53 N. Y. 574; *Morton* v. *Mayor, etc.,* 140 N. Y. 207; *Hill* v. *Mayor, etc.,* 139 N. Y. 495; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.,* 103 N. Y. 10; *Bohan* v. *P. J. G. L. Co.,* 122 N. Y. 18.) As the act of 1872 failed to authorize compensation for property taken by it, if it should be construed as authorizing the wall and bridge to be located where they are, it would be unconstitutional as taking private property for public use without requiring compensation to be made. (*Kane* v. *N. Y. E. R. R. Co.,* 125 N. Y. 165, 180; *Abendroth* v. *M. R. Co.,* 122 N. Y. 1; *Lahr* v. *M. E. R. Co.,* 104 N. Y. 269; *Story* v. *N. Y. E. R. R. Co.,* 90 N. Y. 122; *Reining* v. *N. Y., L. & W. R. Co.,* 128 N. Y. 158; *Egerer* v. *N. Y. C. & H. R. R. R. Co.,* 130 N. Y. 108; *People ex rel.* v. *Loew,* 102 N. Y. 471; 39 Hun, 491; *Morgan* v. *King,* 35 N. Y. 454; *Bloodgood* v. *M. & H. R. R. Co.,* 18 Wend. 18; *Bradshaw* v. *Rodgers,* 20 Johns. 103; *Wallace* v. *Karlenowefski,* 19 Barb. 118; *Gould* v. *Glass,* 19 Barb. 179.) The judgment dismissing the complaint on the merits in effect wrests the plaintiff's property from her and awards it to the defendants without compensation, and is practically a judgment for the confiscation of the plaintiff's property. (*Gil-*

*man* v. *Tucker*, 128 N. Y. 190.) The court erred in dismissing the complaint on the ground that a large portion of the depreciation has arisen from the lawful occupation of the land adjacent to and opposite the plaintiff's property for railroad purposes. (*Drucker* v. *M. R. Co.*, 106 N. Y. 157, 164; *Schriver* v. *Village of Johnstown*, 71 Hun, 232, 234–236; 148 N. Y. 758; *B. & P. R. R. Co.* v. *F. B. Church*, 108 U. S. 317, 335; *Bonnell* v. *Griswold*, 89 N. Y. 122; *Schwinger* v. *Raymond*, 83 N. Y. 193.) The court erred in dismissing the complaint on the ground that the plaintiff's mere omission to bring suit till nearly eighteen years after the erection of the wall and bridge, barred her right of action. (*Galway* v. *M. E. R. Co.*, 128 N. Y. 132; *Menendez* v. *Holt*, 128 U. S. 514.)

*Hamilton Harris* and *Henry H. Anderson* for respondents. The structure complained of is a lawful structure, substantially a change of grade of Forty-eighth street, erected by order of a commission appointed by special act, the defendants in these acts, under the law, acting as agents of the commission and not presently responsible therefor. The injury, if any, is trifling and the claim is stale. ( *Wormser* v. *Brown*, 149 N. Y. 163.) The care, custody and control of the public streets are within the charge of the city as commissioners of highways. (Val. Laws, 1208; 2 R. L. 1813, § 193.) The public authorities charged with the care and custody of the public streets may change the grade of any street for the convenience of the public, if authorized by the legislature of the state, without being liable to any damages in law by reason of such change, unless provision therefor is made by law. (*Radcliff's Exrs.* v. *Mayor, etc.*, 4 N. Y. 195; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y. 42; *Moyer* v. *N. Y. C. & H. R. R. R. Co.*, 88 N. Y. 351; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98; *Atwater* v. *Trustees of Canandaigua*, 124 N. Y. 602; *Smith* v. *City of Washington*, 20 How. [U. S.] 135; *Transportation Co.* v. *Chicago*, 99 U. S. 635; *Moore* v. *N. Y. E. R. R. Co.*, 130 N. Y. 523; *Fobes* v. *R., W. & O. R.*

R. Co., 121 N. Y. 505; Conklin v. N. Y., O. & W. R. Co., 102 N. Y. 107; Wormser v. Brown, 149 N. Y. 163; Rauenstein v. N. Y., L. & W. R. Co., 136 N. Y. 535.)

BARTLETT, J. This action is brought to enjoin the defendant corporations from maintaining or using the bridge over Fourth avenue on which Forty-eighth street crosses as a public highway and a certain protection wall adjacent to plaintiff's house in the same street; also to compel the removal of the bridge and wall.

In 1869 the plaintiff purchased a lot 250 feet west from Fourth avenue, on the north side of Forty-eighth street, and erected thereon a brown stone front house. Shortly after the erection of this house the New York and Harlem Railroad Company acquired title to all the land on the north side of Forty-eighth street, lying between plaintiff's premises and Fourth avenue; also a large amount of land on the south side of the street opposite the lot of plaintiff. On the 1st of April, 1873, the New York and Harlem Railroad Company leased to the New York Central and Hudson River Railroad Company its railroad, extending from Forty-second street along Fourth avenue to the Harlem river.

In 1872 the legislature passed an act (Ch. 702) entitled "An act to improve and regulate the use of the Fourth avenue in the city of New York," for the purpose among others of rendering the same safe and convenient for persons crossing the same.

The act provided that the New York and Harlem Railroad Company should construct, at Forty-eighth street, a tunnel under the Fourth avenue for sidewalks and carriage ways, or a bridge over the same for a like purpose, and that the tunnel or bridge should be at least thirty-four feet wide. The act had for its general object the abolition of grade crossings to conserve the public safety, as it was contemplated to run trains from the Grand Central Station at Forty-second street to the Harlem river at a high rate of speed. It was a work of public necessity and involved a large expenditure, which

was shared equally by the city of New York and the defendants.

The act appointed a board of engineers to execute, direct and superintend the construction of the improvements, to be called "The Board of Engineers of the Fourth Avenue Improvement."

This board was made up of five members, one of whom was the chief engineer of the board of public works of the city of New York for the time being, and another was the engineer of the New York and Harlem Railroad Company, and was authorized and directed to take entire charge and control of the work, and to prepare plans and specifications and an estimate of the expense, and file them in the office of the comptroller of the city of New York; they were also required to take an oath of office before a judge of a court of record and file it with the comptroller.

All these provisions were duly observed, and on the 30th of June, 1872, it was resolved by the board to authorize the construction of an iron bridge over the railroad tracks at Forty-eighth street. On the 25th of July, 1872, the board awarded a contract for this work to the Watson Manufacturing Company, in accordance with plans, etc., duly filed, and directed the New York and Harlem Railroad Company to execute the contract with that company. This was done, the bridge was constructed, and is the one complained of by the plaintiff. The bridge has approaches on its westerly side commencing opposite to the eastern boundary of plaintiff's premises and ascending upon the lines prepared by the board of engineers until they meet the iron structure spanning the avenue.

The bridge is thirty-four feet wide as the act requires, and is placed on the south side of the street, the latter being about sixty feet in width, thus leaving the north sidewalk and a strip of the surface roadway unoccupied by the new structure. In order to close this side of the street and prevent those traveling upon Forty-eighth street from injury in attempting to cross the railroad tracks at grade, and as a part of the official plan as filed, a wall of brick was constructed eight feet three

inches high and about thirty-one feet long, beginning at the southeasterly corner of plaintiff's house, and extending over the discontinued portions of the sidewalk and roadway to the corner of the bridge structure.

The trial court found that the bridge had been used since its construction as a public highway both for carriages and foot passengers, and that its approaches have been kept paved and in order and the bridge lighted ever since by the corporation of New York. It is further found that the corporation defendants have not had the custody of, or maintained the bridge or the wall, or used the bridge; that they have in several instances replaced bolts to prevent danger to passing trains, and repainted the iron work which had been disfigured by the smoke of the engines.

It is also found that the board of engineers were able and skillful men, and that the work was examined by them after completion and accepted as duly performed under the provisions of the act of 1872.

It was under this condition of affairs, and nearly twenty years after this work was begun, that the plaintiff instituted this suit, alleging she had suffered great damage by reason of the bridge and wall.

The trial court found that the effect of the wall was to prevent, to a certain extent, access of a carriage to the front steps of plaintiff's house, and that in the early morning it cast a slight shadow into the front basement room, but later in the day the reflection from the wall increased the light.

It was also found that the bridge itself did not injuriously affect the light, air or access to plaintiff's house; that the damage caused by the wall was inconsiderable, and that it could not be determined from the evidence given how much in money that damage had been, or how much resulted from the lawful occupation of its own land by the railroad company adjoining and opposite to the plaintiff's premises, and not forming a part of Forty-eighth street.

It is not necessary, however, to determine whether the court below properly disposed of the question of damages upon the

evidence, as we are of opinion that the law, as applied to the admitted facts, imposes no liability on the defendants.

We have in this case a change of grade of one of the public streets of the city of New York, the fee of which was in the city, by command of the legislature, under the supervision of a board of engineers of its own creation.

The defendant company acted as the agent of the board, and conducted the work according to its plans and under its supervision and control. On the completion of the work and its acceptance by the board it has been maintained and used by the city of New York ever since as a part of its highway system.

These facts show that even if the plaintiff has suffered damage, and can compel removal of the wall and bridge, the defendants are not liable in damages, nor would a decree of removal against them be of any force or effect, as they are not in possession of the bridge, or maintaining or using the same.

We think, however, that the facts show no liability on the part of any one.

While it is a general rule that abutting owners upon city streets, although not vested with the fee, are entitled to the use of the street for access and other purposes, of which they cannot be deprived without compensation, yet this right is subject to important exceptions. In the case of *Reining* v. *N. Y., L. & W. R. Co.* (128 N. Y., at page 165), Chief Judge ANDREWS, in a discussion of these exceptions as applied to a very different state of facts, said :

" The cases of change of grade furnish apposite illustrations. They proceed on the ground that individual interests in streets are subordinate to public interests, and that a lot owner, although he may have built upon and improved his property with a view to the existing and established grade of the street, and relying upon its continuance, has no legal redress for any injury to his property, however serious, caused by a change of grade, provided only that the change was made under lawful authority. This, it is held, is not a taking of the abutting owners' property, and the injury requires no compensation."

21

In the case at bar there is no closing of the street, nor is the plaintiff excluded therefrom within the principle of the *Story* case (90 N. Y. 122).

The abolition of the grade crossing was required for the public safety, and the wall shutting out the traveler from the north sidewalk and strip of roadway leading down to the railroad tracks was a necessary part of the work ordered by the legislature.

This wall stands upon the property of the defendants and the city.

The proposition that in this case there is no taking of private property for public use under the provisions of the Constitution and that the acts complained of are *damnum absque injuria*, has been frequently sustained by this court. (*Radcliff's Executors* v. *Mayor, etc., of Brooklyn*, 4 N. Y. 195; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y. 42; *Moyer* v. *N. Y. C. & H. R. R. R. Co.*, 88 N. Y. 351; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98; *Atwater* v. *Trustees, etc.*, 124 N. Y. 602.)

The Supreme Court of the United States has also approved the rule. (*Smith* v. *Corporation of Washington*, 20 How. [U. S.] 135; *Transportation Company* v. *Chicago*, 99 U. S. 635, 641.)

The appellant discusses other questions which need not be considered in detail as they have no direct bearing upon the main and controlling point in this case. The plaintiff's contention that the defendants unlawfully occupy that portion of Forty-eighth street which is barred off from public use by the bridge and wall is not relevant to this controversy; it is a question between the defendants and the city of New York if the latter's property rights have been invaded.

The bridge approach and wall were located by the state through its agents; and as to the strip of land shut off from public use, it was in no legal sense a closing of the street, but a necessary provision to turn the tide of travel upon the sidewalks and roadway over the bridge. There is no finding, as contended, that this wall during the last ten years, or for any

other period of time, has been maintained by either of the defendants, but there is an express finding to the contrary.

It is not necessary to examine the question of the Statute of Limitations.

We agree with the learned court below that the plaintiff established no cause of action, and that the complaint was properly dismissed on the merits.

The judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed. _____