WEST ONE HUNDRED AND FIFTY-EIGHTH STREET GARAGE COR-
PORATION, Plaintiff, *v.* WILLIAM G. FULLEN and Others, Com-
prising the Transit Commission of the State of New York,
and THE NEW YORK CENTRAL RAILROAD COMPANY, Defendants.

Supreme Court, New York County, February 17, 1931.

*Bijur & Herts* [*Harry Bijur* of counsel], for the plaintiff.

*George L. Stover* [*Frank C. Bowers* of counsel], for the defendant Transit Commission of the State of New York.

*Jacob Aronson*, for the defendant The New York Central Railroad Company.

UNTERMYER, J. The plaintiff, the lessee of the premises known as 658 West One Hundred and Fifty-eighth street in the borough of Manhattan, consisting of a two-story brick garage building, with an existing frontage on the south side of the street of over 200 feet, seeks an injunction *pendente lite* enjoining the defendants, constituting the Transit Commission of the State of New York and The New York Central Railroad Company, from continuing work in connection with the elimination of the railroad grade crossing at the westerly end of One Hundred and Fifty-eighth street. This is part of a project affecting the whole west side of Manhattan, involving an expenditure of upwards of $150,000,000, which is undertaken pursuant to chapter 677 of the Laws of 1928, known as " New York City Grade Crossing Elimination Act." The contemplated elimination of the railroad grade crossing consists of a highway bridge over the railroad tracks with an approach ramp from the east within the limits of One Hundred and Fifty-eighth street. The work on this ramp was commenced on July 10, 1930.

Photographs of the work disclose that at the present time the level of the street on which the plaintiff's property abuts has been changed, beginning at a point about ten feet west of the easterly end of the plaintiff's premises and extending along its entire remaining frontage. Commencing at this point the new grade gradually rises to a height of about eighteen feet at the easterly building line of Riverside Drive. The work has progressed to a point where the ramp, which has been constructed along the southerly building line of One Hundred and Fifty-eighth street flush against the brick wall of the plaintiff's premises, has completely blocked off and submerged the lower floor of the premises. The entrance to the upper floor has not been obstructed, but remains at the original level of the street, slightly east of the ramp. A sidewalk is now under construction along the plaintiff's premises at the level of the ramp. It cannot be disputed that although the plaintiff will suffer serious indirect or consequential damage, it will have full access to the highway along its entire lateral margin at the new level and that the character of the improvement falls within the category of a change of grade. (*People ex rel. Crane* v. *Ormond*, 221 N. Y. 283.) Cases which involved the abutting owner's right

of access to the street (*Egerer* v. *N. Y. C. & H. R. R. R. Co.*,130 N. Y. 108; *People ex rel. Winthrop* v. *Delany*, 120 App. Div. 801; *Matter of Hoyt*, 162 id. 469) are, therefore, not applicable here.

The plaintiff bases its claim to injunctive relief upon the alleged unconstitutionality of the Grade Crossing Elimination Act, which, it is asserted, violates article I, section 6, of the Constitution in failing to provide any compensation for the damages sustained by the plaintiff in consequence of the change of grade. That act provides for the payment of compensation to the owners of property acquired by the State and provides further that the State shall be liable in the first instance " if the *work* of such elimination causes damage to property not acquired," but that " this provision shall not be deemed to create any liability not already existing in law." (Laws of 1928, chap. 677, § 7.) Both parties unite in the contention that no remedy for consequential damages resulting from a change of grade is afforded by the provisions of the act. This, it is said, follows from the language of the act, which provides only for compensation for damages resulting from " *the work* of such elimination " and specifically limits these to liabilities " already existing in law." Such liabilities, it is suggested, are such, for instance, as may arise from injury to real or personal property caused by negligent performance of " the work," or by trespass upon property — these being liabilities " already existing in law " when the act was passed. It must be conceded that both the passage of the Thayer Bill (Senate Bill, Int. No. 509, 1930) by the Legislature amending the Grade Crossing Elimination Act expressly to provide for payment of damages resulting from a change of grade as well as the veto of that bill by the Governor on the ground that such a remedy should not be afforded by law, lend force to the view that the act as it now stands was not intended to provide compensation for such damages as these.

Both parties seem also to agree that section 951 of the Greater New York Charter (Laws of 1901, chap. 466, as amd. by Laws of 1920, chap. 786), which provides for compensation to the owners of abutting improved property where the city undertakes to change the grade of any street, does not apply to the conditions here. That section, it is said, does not apply because the remedy afforded thereby is limited by section 952, which expressly provides that section 951 shall not be construed to " affect the powers of any commission acting under any laws of this State." No doubt it is true that the improvement here in question falls within this exception. It is not an ordinary change of grade undertaken by the city, but is a project by the State operating through its own agencies, to reduce the peril of travel on

the highways. (*Transit Commission* v. *Long Island R. R. Co.*, 253 N. Y. 345.) Probably, therefore, the provisions of the Greater New York Charter are not applicable to an improvement of this character. (See *Miller* v. *State*, 229 App. Div. 423, and *Matter of Lawton* v. *City of New Rochelle*, 123 id. 832; affd., 193 N. Y. 656.)

Notwithstanding the concessions of the parties to this suit, however, the scope of the relief afforded by the Grade Crossing Elimination Act need not, and should not, be determined here, on account of the effect of such a determination on the rights of other property owners who may occupy the same position and who are not before the court. One of two consequences, neither of which requires the determination of that question, must necessarily follow from the provisions of the Grade Crossing Elimination Act and the New York city charter. Either (1) a right is thereby afforded to compensation for consequential damages sustained, in which event the Grade Crossing Elimination Act would violate no constitutional prohibition, or (2) they afford no such remedy, in which event the plaintiff can succeed only if the right to the maintenance of the street at grade is one which is protected by the Constitution.

I am constrained to hold that the injury which is asserted here is not one for which the plaintiff is entitled to compensation under the Constitution. It does not follow that because the State must compensate the owner for property taken for a public use that he is entitled to compensation for all indirect or consequential damage to his property resulting from the improvement of the highway by the State. The rights of owners of property abutting on the highway were defined by ANDREWS, J., in *Reining* v. *N. Y., L. & W. R. Co.* (128 N. Y. 157, at pp. 164, 165) as follows: "The right of abutting owners in the streets is not, however, of that absolute character that they can resist or prevent any and all interference with the street to their detriment, or which can be asserted to stay the hand of the municipality in the control, regulation or improvement of the streets in the public interest although it may be made to appear that the privileges which they had theretofore enjoyed, and the benefits they had derived from the street in its existing condition, would be curtailed or impaired to their injury by the changes proposed. The cases of change of grade furnish apposite illustrations. They proceed on the ground that individual interests in streets are subordinate to public interests, and that a lot owner, although he may have built upon and improved his property with a view to the existing and established grade of the street, and relying upon its continuance, has no legal redress for any injury to his property, however serious, caused by a change of grade, provided only that the change is made under lawful

authority. This, it is held, is not a taking of the abutting owner's property, and the injury requires no compensation."

It must be regarded as settled law in this State that a change in the grade of a public street for the use of the public made pursuant to lawful authority does not constitute a taking of property within the meaning of the Constitution and that the abutting owner, in the absence of statute, has no legal redress for any consequential injury no matter how serious it may be. (*Sauer* v. *City of New York*, 180 N. Y. 27; affd., 206 U. S. 536; *Talbot* v. *N. Y. & Harlem R. R. Co.*, 151 N. Y. 155; *Smith* v. *Boston & Albany R. R. Co.*, 181 id. 132; *Radcliff's Executors* v. *Mayor, etc., of Brooklyn*, 4 id. 195.) It is only when the proper use of the highway is subverted by the erection of an obstruction intended for the exclusive use of a private individual or corporation that any right of the abutting owner is invaded. (*Story* v. *New York Elevated R. R. Co.*, 90 N. Y. 122; *Lahr* v. *Metropolitan Elevated R. Co.*, 104 id. 268; *Kane* v. *New York Elevated R. R. Co.*, 125 id. 164; *Reining* v. *N. Y., L. & W. R. Co., supra; American Bank Note Co.* v. *New York Elevated R. R. Co.*, 129 N. Y. 252.) The highway is then subjected to an additional servitude. Speaking of this distinction the Supreme Court of the United States in the *Sauer* case said: " Has the plaintiff been deprived of his property without due process of law? The viaduct did not invade the plaintiff's land. It was entirely outside that land. But it is said that appurtenant to the land there were easements of access, light and air, and that the construction and operation of the viaduct impaired these easements to such an extent as to constitute a taking of them. The only question which need here be decided is whether the plaintiff had, as appurtenant to his land, easements of the kind described; in other words, whether the property which the plaintiff alleged was taken existed at all. The court below has decided that the plaintiff had no such easements; in other words, that there was no property taken. It is clear that under the law of New York an owner of land abutting on the street has easements of access, light and air as against the erection of an elevated roadway by or for a private corporation for its own exclusive purposes, but that he has no such easements as against the public use of the streets or any structures which may be erected upon the street to subserve and promote that public use." Continuing, the court said: " We are not concerned with the question whether the distinction between an elevated structure for the exclusive use of a corporation and the same structure for the purposes of public travel is, so far as an abutting land owner is concerned, a just or harsh one, provided it is a clear distinction based upon real differences. We think that before the plaintiff

had acquired his title the law of New York had plainly drawn this distinction. The highest court of the State had held that the contract of the owner of land abutting on streets entitled him to the right of unimpaired access and uninterrupted circulation of light and air as against an elevated structure erected for the exclusive use of a private corporation, had, with scrupulous care, refrained from holding that he had the same right as against an elevated structure of the same kind erected for the purpose of public travel, and had pointed out plainly the essential distinction between the two cases." (*Sauer* v. *City of New York, supra.*) Where, as here, the State exercises its paramount right to make such changes or improvements in the grade of the street as will serve the interests of the public, the inconvenience or injury resulting to abutting property is, in the absence of statute, *damnum absque injuria.* This rule, it is true, has not escaped criticism (See dissenting opinion in *Fries* v. *New York & Harlem R. R. Co.*, 169 N. Y. 270; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 id. 10, 19; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166, 181), due to the hardships which it has frequently occasioned to abutting owners, but the rule remains unshaken (*Matter of Crane* v. *Craig*, 230 N. Y. 452), and results in the conclusion that the right which the plaintiff asserts to the maintenance of the street at grade is one which is not safeguarded by the Constitution. Whenever such a right exists, it is only by reason of an express statutory provision such as failed of enactment here. (*People ex rel. Janes* v. *Stillings*, 197 N. Y. 546, at p. 550.) (See, also, in addition to section 951 of the Greater New York Charter, section 59 of the Highway Law and section 159 of the Village Law.) Even on the assumption, therefore, that no statute provides for compensation to the plaintiff for the serious damage which it has sustained, the motion for a temporary injunction must be denied. Order signed.