WEST 158TH STREET GARAGE CORPORATION, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 22172.)

Court of Claims, August 29, 1938.

*Bijur & Herts* [*Harry Bijur* and *Joseph E. Rizzo* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Leon M. Layden, James H. Glavin, Jr.,* and *Gerald J. Carey, Assistant Attorneys-General,* of counsel], for the defendant.

*Clive C. Handy* [*William R. Stevens* of counsel], and *Whalen, McNamee, Creble & Nichols* [*Kenneth Creble* of counsel], for The New York Central Railroad Company.

*Cravath, deGersdorff, Swaine & Wood* [*Jesse C. Millard* of counsel], for the Staten Island Rapid Transit Railway Company, *amicus curiæ.*

*Louis Carruthers* [*Paul Tison* of counsel], for The Long Island Rail Road Company, by permission.

*Joseph Rosch* [*Alfred Kelly* of counsel], for the Delaware & Hudson Railroad Company, by permission.

RYAN, J: This is an application to vacate and set aside a judgment of this court entered June 3, 1932, upon an order dismissing the claim of the above-entitled claimant upon the ground that such claim failed to allege facts sufficient to constitute a cause of action against the State of New York. No appeal from such judgment of dismissal was prosecuted by the claimant. The application is based upon an alleged error of law. The limitation prescribed by section 528 of the Civil Practice Act does not, therefore, apply. That section refers to a motion to set aside a final judgment for error in fact not arising upon the trial.

The power of this court to set aside its own judgment when " confronted by the indisputable fact that the original decision herein was wrong and contrary to law, and that this wrong must endure, and remain without a remedy unless the court " acts, was discussed at length and with ample citation of authorities by Judge ACKERSON in *Siegel* v. *State* (138 Misc. 474). That decision has not been disturbed and stands as precedent for granting the claimant's application, provided, of course, that we are satisfied that the original decision herein was based on error of law, and provided further that no other bar stands in the way of the relief now sought.

This claimant was and is the lessee of the premises located at 658 West One Hundred and Fifty-eighth street, borough of Manhattan, city of New York. At that address it conducted a garage business and occupied a two-story garage building situated on the south side of West One Hundred and Fifty-eighth street at the

westerly end thereof. The premises occupied abut directly upon the easterly wall of Riverside Drive viaduct, having a frontage along West One Hundred and Fifty-eighth street of 211 feet and a depth of 100 feet north and south. The two-story garage building covers the entire site. West One Hundred and Fifty-eighth street descended at a sharp grade down to the westward, passed under the Riverside Drive viaduct and formerly crossed at grade the tracks of the New York Central Railroad Company lying immediately to the west of said viaduct. Thus, as the building was constructed, the easterly end of its upper floor was at the street level with an entrance there and the westerly end of the upper floor was one story above the street level. At the same time the lower floor at its easterly end was a basement below the street level and at its westerly end was at the level of the street with an entrance from the street at that point. The sole means of access for automobiles to each floor was through its separate street entrance.

Pursuant to plans approved by the transit commission April 9, 1930, the grade crossing which theretofore existed directly west of the Riverside Drive viaduct was eliminated. Work thereon was commenced sometime in June, 1930. The westerly or lower extremity of West One Hundred and Fifty-eighth street was raised and carried over the railroad tracks and through the Riverside Drive arch on a concrete deck on steel supports. The east approach to the deck within the limits of West One Hundred and Fifty-eighth street was constructed on a fill between reinforced concrete retaining walls just inside of the north and south building lines of West One Hundred and Fifty-eighth street. Commencing at a point approximately 200 feet east of the westerly wall of the Riverside Drive viaduct, which point is about eleven feet west from the easterly line of the building occupied by claimant, the fill gradually rises to a height of more than sixteen feet above what had been the street level of West One Hundred and Fifty-eighth street at the easterly wall of the viaduct. Access to the lower floor of claimant's garage was completely cut off by the construction.

Opposing parties hereto are in substantial agreement as to the physical changes wrought by this grade crossing elimination. The dismissal of claimant's claim was upon the theory that the damages it sustained resulting from such elimination were *damnum absque injuria.*

Before filing its claim in this court this claimant sought relief by injunction against the transit commission and its suit terminated with the well-known decision of Mr. Justice UNTERMYER at Special Term (*West 158th Street Garage Corp.* v. *Fullen*, 139 Misc. 245).

Unsuccessful in its suit for an injunction, the claimant filed its claim in this court. This resulted in the judgment now sought to be set aside. At about the same time the owner of the fee of the premises occupied by claimant, namely, the Regulus Realty Co., Inc., filed its claim in this court based upon the same facts. From a judgment of dismissal, likewise made upon motion and order, Regulus appealed to the Appellate Division, Third Department. The judgment of dismissal was affirmed, without opinion (*Regulus Realty Co., Inc., v. State*, 238 App. Div. 882). Leave to appeal to the Court of Appeals was denied (239 App. Div. 365). The Attorney-General informs us that leave to appeal to the Court of Appeals was denied by that court by order dated July 11, 1933, not officially reported.

Since there was neither identity of parties nor identity of cause of action, the fact that the companion cause of claimant's landlord was appealed and the order of dismissal affirmed cannot be construed *res judicata* with respect to this claim. Nevertheless, it is urgently argued that the record in the *Regulus* case is conclusive and final as to this claimant. Were it not for the trend of judicial decision which has developed in the years which have intervened since July, 1933, we might be constrained to accept the argument advanced by the Attorney-General and by counsel for the interested railroad companies.

Clearly, it is " settled law in this State that a change in the grade of a public street for the use of the public made pursuant to lawful authority does not constitute a taking of property within the meaning of the Constitution and that the abutting owner, *in the absence of statute,* has no legal redress for any consequential injury no matter how serious it may be." (*West 158th Street Garage Corp.* v. *Fullen, supra.*) Unquestionably, in granting orders of dismissal both in this case and in the companion case of *Regulus* this court had in mind the ruling in *Miller* v. *State* (229 App. Div. 423). Nor can there be doubt that the affirmance in the *Regulus* case was based upon the same authority. (See, also, *Van Aken* v. *State,* 261 N. Y. 360.) Moreover, statutory authority for the relief of property owners injured as this claimant has been was generally believed by courts, bar and Legislature to be nonexistent. The then general understanding and accepted interpretation of the law is evidenced by the introduction in the legislative sessions of 1930 and subsequent years of bills intended to amend the various grade crossing acts, being Laws of 1928, chapters 677, 678, 679 and 825. Indeed in 1930 such bills were passed but were vetoed by the Governor. It is argued that the passage of such legislation (the Thayer bills of 1930) indicated that the Legislature

had not intended by its original grade crossing enactments to create any liability against the State of New York. But it did incorporate in each act language similar to that contained in Laws of 1926, chapter 844, and it was the enlightening opinion of Mr. Justice Thompson in the Fourth Department in the case of *Askey & Hager, Inc.*, v. *State* (240 App. Div. 451) that led the way to the realization that after all the Legislature had saved to abutting property owners their right to recovery provided that there existed at the time that the grade crossing acts went into effect a remedy available to them. Almost a year passed before affirmance by the Court of Appeals of this decision, unanimously and without opinion (266 N. Y. 587).

This court in a varied series of cases then began to apply the principle announced in the *Askey & Hager* case. Affirmances of our decisions in two cases arising under the Syracuse Grade Crossing Act (Laws of 1928, chap. 825) and in one case arising under Village Law (§ 159, subd. 2) settled the doctrine. (See *Champion Oil Co., Inc.*, v. *State*, 161 Misc. 143; affd., 251 App. Div. 781; leave to appeal to Court of Appeals denied, Id. 881; 275 N. Y. 649; *Caldwell & Ward Brass Co.* v. *State*, 161 Misc. 147; affd., 251 App. Div. 781; affd., 277 N. Y. 547; *Knights* v. *State*, 161 Misc. 552; affd., 251 App. Div. 781; leave to appeal to Court of Appeals denied, Id. 881; 275 N. Y. 650.)

Nor did the reversal of our decision by the Fourth Department in the *Dwornik* case upset the doctrine so far as correct statutory construction is concerned. That decision merely stated that the appellate court failed to find in the record proof that brought the case within the " ancient streets " rule, adding that " in any case it is doubtful that claimants have any right to damages for being deprived of the use of an ' ancient street ' where they are not cut off short of the next intersecting street." (*Dwornik* v. *State*, 155 Misc. 458; revd., 251 App. Div. 675; appeal to the Court of Appeals now pending.)

In a case which did not arise under any grade crossing act but which did result from the filling in of a highway by a State agency without any vestige of right or authority so to do and without any formal appropriation of any part of the land of the abutting property owner, we again alluded to the principle expressed in the *Askey & Hager* decision. It is interesting to note that although our decision was reversed by the Appellate Division, Third Department, except in one particular, the Court of Appeals has recently justified our original determination and has held that sections 770 and 781 of the Conservation Law provide the statutory assumption of liability necessary for the property owner concerned to

recover damages resulting from a change in the highway which otherwise would have been *damnum absque injuria.* (*Licht* v. *State*, 161 Misc. 149; modfd., 251 App. Div. 524; revd., 277 N. Y. 216.)

The important decision to be considered in reaching a determination upon this motion is, after all, that of *Knights* v. *State* (*supra*), wherein after the unanimous affirmance without opinion by the Appellate Division, Fourth Department, the Court of Appeals denied leave to appeal. In the *Knights* case we held that the damages formerly recoverable against a village under the provisions of the Village Law, section 159, subdivision 2, as that statute read prior to its amendment by Laws of 1936, chapter 294, were recoverable against the State of New York by virtue of the clause in Laws of 1928, chapter 678, section 6, which contains the identical language appearing in Laws of 1928, chapter 677, section 7, hereinafter quoted.

The Greater New York Charter, section 951, provided as follows: "An abutting owner who has built upon or otherwise improved his property in conformity with the grade of any street or avenue established by lawful authority, and such grade is changed after such buildings or improvements have been erected, and the lessee thereof, shall be entitled to damages for such change of grade."

Laws of 1928, chapter 677, section 7, provides as follows: "If the work of such elimination causes damage to property not acquired as above provided, the State shall be liable therefor in the first instance, but this provision shall not be deemed to create any liability not already existing in law."

Clearly at the time that Laws of 1928, chapter 677, took effect there existed in favor of an abutting owner and his lessee a remedy against the city of New York under the provision of section 951 of the Greater New York Charter. Construing the language above quoted from Laws of 1928, chapter 677, section 7, in the manner in which the similar clause contained in Laws of 1926, chapter 844, was construed in the *Askey & Hager* case and accepting the other decisions hereinabove referred to as settling the doctrine, can there now be any question that the abutting owner's remedy and his lessee's as well has been preserved and continued? Has not the State " by the plain mandate of the statute " set up its liability in the first instance for damages for injuries caused to property not acquired for purposes of the elimination?

Confronted with the interpretation of the Village Law, section 159, subdivision 2 (before amendment), as now fixed by the Court of Appeals in the *Knights* decision, the Attorney-General seeks to distinguish between that statute and section 951 of the Greater

New York Charter here under discussion. He argues that the Village Law created absolute liability upon the village irrespective of who or what agency did the work. He declares that under the Greater New York Charter provision there is liability upon the city of New York only when the city does the work. But inasmuch as the Legislature in enacting section 951 was talking about the city which it was creating it is clear that if this provision means anything it means that the city should be liable for the damage if proven. Nor does the language of section 952 of the charter negative this idea. It recites: " The foregoing section shall not be construed to authorize the making of an award for loss or damage caused by change of grade in any case in which an award could not legally be made under laws existing immediately previous to the passage of this act, and affecting any part of the territory of the mayor, aldermen and commonalty of the city of New York nor shall it be construed to affect the powers of any commission acting under any laws of this State."

The important words are " nor shall it be construed to affect the powers of any commission acting under any laws of this State." The position of the Attorney-General is that these words mean that when the State stepped in and became the actor it could go ahead and change the street grades in the city of New York, thereby leaving landowners and lessees remediless. Such a construction of these words would be intolerable. It seems to us that a proper construction of them is to say that they mean: *Nor shall it (section 951) be construed to change either by enlarging or diminishing the powers of any commission hereafter acting under any laws of this State.* Nothing less than the most compelling language would justify such a construction as the Attorney-General seeks to put upon the language quoted. (*Baltimore & Philadelphia Steamboat Co.* v. *Norton*, 284 U. S. 408, 413.)

When interpreting the meaning of words in an act of the Legislature which may be open to different meanings or applications it is essential to consider the purpose and history of the legislation. When once the general purpose and intent of the law has been ascertained, every part of it should be so construed as to promote the purpose and finally to accomplish the end for which it was enacted. The entire law must be looked at as one general endeavor to work justice and not injustice. (*West Penn. Sand & Gravel Co.* v. *Norton*, 95 F. [2d] 498.)

We find nothing in the language of section 952 which says that the liability created by the opening sentence of section 951 shall be wiped out when a governmental agency other than the city of New York itself does the work. The statute providing for

grade crossing elimination as a State undertaking sought to preserve the limited existing remedies of owners and lessees of real property injured by change of street grade. Ordinarily none of the property is actually taken in such cases. The object was to provide as against the State just such rights to compensation for injury resulting from the change of the grade as had theretofore existed against the city of New York.

Our attention has been called to a Special Term decision of Mr. Justice Personius in a case arising in the city of Elmira wherein abutting property owners sought to recover from the city damages for change in street grade resulting from a grade crossing elimination when the work was done by the State of New York. The claim was based upon the provisions of article 7 of the charter of the city of Elmira, being Laws of 1906, chapter 477. It is clear from a reading of the provisions of the Elmira charter, and as is carefully pointed out in the decision, " that article applies only when the common council *intends* to take property and has declared ' by resolution its intention.' " (*Matter of Baker* v. *Mayor,* 156 Misc. 243.) Far different indeed is the language of the Greater New York Charter, section 951.

Nor is the decision in the case of *Lewis* v. *State* (233 App. Div. 884; affd., 258 N. Y. 568) controlling herein. The facts in the *Lewis* case are clearly to be distinguished from the facts here as an examination of the record in the *Lewis* case will disclose.

We are aware of a previous instance wherein the provision of section 951 of the Greater New York Charter was presented to this court as a statute creating liability which the State of New York had assumed. That case is unreported. Like the instant case it was dismissed by the Court of Claims upon a motion made by the State. No appeal was taken by the claimant. The order of dismissal was entered September 18, 1931. A brief memorandum, written by the late Judge Potter, after reciting the facts, reads as follows: " The claimant seeks to recover under the provisions of section 951 of the New York City Charter, * * *. I cannot agree with the contention of the claimant. I am of the opinion that this provision of the charter has been superseded by the New York City Grade Crossing Act. No part of claimant's property was taken and this is a motion made by the State to dismiss the claim upon the ground that it does not state a claim against the State; in other words, that the damages, being consequential, there can be no recovery. This motion must be granted. In my judgment there is no statutory authorization for the allowance of this claim and in the absence of such a statute, the damages being consequential, there is no liability resting upon the State. (*Miller* v. *State,* 229 App. Div. 423.) "

The above decision was that of *Cross Island Realty Corp.* v. *State* (*Claim No. 21690*) (unreported). It is apparent that the application by Judge POTTER of the decision in the *Miller* case, wherein at the time of his writing he had then recently been affirmed, represented the understanding which both the courts and the bar then had of the law applicable to cases of this nature. This all transpired prior to the pioneering decision of the Fourth Department in the *Askey & Hager* case.

Although the facts are clearly distinguishable it may be well that we refer also to the claim of Joseph Zevens (Claim No. 19823). The claimant owned property abutting on Main avenue, Douglaston, Long Island, borough of Queens, city of New York. He was represented in our court by the same counsel who presented the *Regulus* case. Like the *Regulus* case the claim was dismissed upon motion. The order was entered June 3, 1932. Appeal to the Appellate Division, Third Department, resulted in affirmance without opinion (238 App. Div. 882), coincident with the *Regulus* affirmance.

There was no change of street grade in front of Zevens' property. Instead, the street was fenced off along the adjacent right of way of the Long Island Railroad Company. Zevens still had access over Main avenue in one direction. The question of liability under section 951 of the Greater New York Charter was not raised.

An examination of the briefs on appeal discloses that in both the *Zevens* and the *Regulus* cases argument for liability of the State was based on the provisions of the Railroad Law, sections 92–94, supported chiefly by the authorities of *People ex rel. Dole* v. *Town of Hamburg* (58 Misc. 643; affd., 127 App. Div. 948; affd., 193 N. Y. 614, 615) and *People ex rel. Dawson* v. *Duffey* (177 App. Div. 949; affd., 221 N. Y. 594). The affirmance of the *Dole* case was based upon the opinion of Judge HAIGHT in *Smith* v. *Boston & Albany R. R. Co.* (181 N. Y. 132). We have carefully read the Railroad Law and the foregoing decisions. We find no conflict with the determination we are about to make.

The only logical conclusion to be reached after careful consideration of all the foregoing authorities is that this claimant should be permitted to have its day in court and the opportunity to present for audit and determination the items of its damage. When the Grade Crossing Act took effect this claimant had a granted remedy against the municipality for damages it might sustain by a change in the street grade of West One Hundred and Fifty-eighth street even though no portion of the property it occupied was acquired. For this remedy the State has assumed liability in the first instance.

To state the matter differently, had the work treated of in this claim been done by the city of New York prior to the enactment of Laws of 1928, chapter 677, the city of New York would have been liable for the consequential damages inflicted upon claimant's leasehold estate. It follows as a necessary corollary that under the law as now settled and construed the State of New York has stepped into the same liability. Furthermore, we believe that the law as it stood at the time that the work was done in 1930 was to this effect. That the courts had not at that time seen the true path does not alter the fact that it was there and should have been found and followed.

The circumstances with respect to the unsettled condition of the law are peculiar, but now that it has become clarified it is reasonably apparent that the order of dismissal made by this court was improvident and should be set aside and the case should be restored to the docket for a reasonable and just decision based upon proven facts. The thought that this claimant has been guilty of laches might suggest itself if one looked only to the bare statement of the time which has elapsed since the entry of the order or perhaps considered only the date of the entry of the order or perhaps considered only the date of the affirmance of the *Askey & Hager* decision. However, the true aspect of the result of the application of the *Askey & Hager* doctrine did not become apparent until the announcement of the decision in the *Knights* case. Therefore, until the *Knights* case was reviewed upon appeal this claimant would not have been justified in proceeding with this motion. The refusal of the Court of Appeals to review the *Knights* decision was dated only October 5, 1937, and did not appear in the published reports until some weeks later. Claimant made this application with reasonable promptness thereafter.

We think claimant has not been guilty of such delay in applying for relief as amounts to laches. While the courts were finding the law it did nothing to prejudice or impede the search. Wisely, it did not move its cause from the Court of Claims by perfecting an appeal but prudently awaited the slow course of judicial investigation. If it can be said, as perhaps it may, that the profession was still groping in the dark until the *Knights* holding was sanctioned by the highest court of the State, then it might likewise be remarked that this petitioner has moved with celerity.

An order may be submitted granting the relief asked and setting aside the judgment of this court made and entered June 3, 1932, and restoring the claim to the calendar for trial.